UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ARVIND "MIKE" VIRA AND | * | NUMBER: |
| AIRPORT MOTEL, L.L.C. | * | |
| *versus* | * | JUDGE: |
| S&R DEVELOPMENT, INC. | * | |
| | * | MAGISTRATE: |

\* \* \* \* \* \* \* \* \* \* \* \* \*

COMPLAINT FOR BREACH
OF CONTRACT AND DAMAGES

The complaint of Arvind "Mike" Vira, a person of the full age of majority domiciled in the Parish of Orleans, State of Louisiana, and Airport Motel, L.L.C., a Louisiana limited liability company domiciled in Jefferson Parish, with respect represents as follows:

1.

Made defendant herein is S&R Development, Inc., a Mississippi corporation domiciled in Ridgeland, Mississippi.

2.

Jurisdiction herein is based upon diversity of citizenship pursuant to 28 U.S.C. §1332 as both parties reside in different states and the amount in controversy exceeds $75,000.

3.

Defendant, S&R Development, Inc. (hereafter, "S&R") is liable unto plaintiff Arvind "Mike" Vira (hereafter, "Vira") and Airport Motel, L.L.C. for breach of contract, unjust enrichment, tort and such other causes of action in law or equity as are shown by the facts pled herein in an amount that will be proven at trial.

4.

Airport Motel, L.L.C. (hereafter, "Airport Motel") is the owner of a certain parcel of property (the "Property") identified as Plot 137A, Sec. 6, Bainbridge Office & Industrial Park and bearing municipal number 1300 Veterans Boulevard, Kenner, Louisiana.

5.

Vira is the sole member and owner of Airport Motel.

6.

In or about July 2015, Vira, on behalf of Metairie Motel, entered into a construction contract with S&R to build a Holiday Inn Hotel on the Property in accordance with plans and specifications prepared by Norman Patten and Associates, Architects.

7.

S&R is a commercial contractor licensed in the State of Mississippi with experience in building hotels.

8.

The contract between the parties was not reduced to writing but is partially described by notations on a series of pay applications submitted by S&R, approved by the project architect and until April, 2017, paid by plaintiffs.

9.

In general, the parties agreed that S&R would build the hotel for a price not to exceed $9,550,100. S&R agreed that the project would be completed within 12 months, including weather delays, from the start date.

10.

The parties agreed that Hiren Patel, S&R's president, would supervise all construction activities and that he would inspect the progress of the work no less than once a week.

11.

The parties agreed further that Vira would pay S&R the actual cost of materials and labor and a fee of $250,000 upon completion of the job.

12.

Construction began in July 2015.

13.

Problems arose early in the construction process and continued during the entire time that S&R worked on the project.

14.

Specifically, Mr. Patel failed to supervise the project, rarely appearing at the site and on several occasions when he did visit, he arrived at night after workers had left and was not able to observe any work activities.

15.

Instead of supervising the work himself as agreed, Patel assigned a supervisor, Matthew Gautreaux, who had no experience in hotel construction and, upon information and belief, was not licensed as a commercial contract and perhaps not licensed as a contractor at all.  S&R billed plaintiffs for Gautreaux's time and expenses, contrary to the agreement of the parties.

16.

The work proceeded at a pace far too slow to meet the timeline that S&R had promised.

17.

Despite Mr. Vira's and Airport Hotel's expressions of concern about the pace and repeated demands, the job was perpetually understaffed.

18.

Much of the construction that was completed was completed incorrectly. In particular, and without limitation, the following defects and / or variances from the plans were noted:

a. Due to work proceeding out of sequence, a large swath of concrete in the front of the hotel was demolished and then rebuilt in order to accommodate the placement of drainage pipes and electrical conduit.

b. A large structure approximately 10,000 square feet in size was built on the roof where plans called for construction of an elevator cap that was only large enough to cover the opening where the elevator shaft terminated.

c. Most of the floor drains were built level with the surrounding floor instead of a lower elevation that would allow water to flow naturally to them as is required by the plans and generally accepted commercial construction procedure.

d. Large patches of the walls in the hallways of every floor were painted in a slightly different shade requiring the owner to repaint the hallways in order to have a uniform finished appearance.

e. When workers failed to build the concrete floor of the lobby to the proper elevation, S&R compensated by placing two layers of ceramic tile on the floor at a cost of thousands of dollars and resulting in an inferior floor.

f. Window installation was incomplete and / or not in accordance with plans and specifications.

g. Ceramic tile in many of the rooms was installed improperly causing tripping and / or injury hazards that will require repairs.

h. The rubberized roofing materials were installed improperly causing bubbles in the roof and elevation imperfections leading to leaks and standing water on the roof.

i. Roof drains were set at elevations higher than the surrounding roof making it impossible for water to reach the drain opening.

j. Portions of the outer wall are not set at the edge of the concrete slab that forms the floor of the hotel.

k. Non-uniform and inferior materials were used in some of the closets resulting in unsightly and bowed shelves.

l. Rooms specially designed to be accessible to patrons in wheelchairs were not built according to specifications and do not meet applicable building code. ADA compliant rooms were not built where designated on building plans but were scattered randomly on the first floor.

m. Tables and bar heights in the restaurant are not built to the correct height and are not usable.

n. The exit area from the elevators on at least two floors are not level as required by building codes and plans and specifications.

o. Walls in the hotel are patched in many areas without matching the surrounding wall texture or color.

p. Some electrical outlets are misplaced and / or not connected to the electricity.

q. The mechanical and pump systems of the pool are enclosed in a concrete and tile structure that has inadequate or non-existent access panels making maintenance and repair inconvenient and costly and creating an unpleasant appearance.

r. The concrete surrounding the pool was not finished properly at the edges creating an impediment to drainage and cleaning.

s. Air conditioning units in the rooms were not properly set and cabinetry was not properly completed.

t. Materials were ordered in incorrect quantities resulting in vast amounts of unused materials that were left on site to be stored or hauled away; or in other instances insufficient quantities of materials were ordered and additional materials were purchased at local retail stores at higher prices and lower quality.

19.

Many of the workers and supervisory staff on the project were hired from remote locations and put up in area hotels with the cost of the hotel accommodations being improperly included in bills to plaintiffs.

20.

The construction was still incomplete as of April 17, 2017, at which time, Vira had paid S&R an amount far in excess of the $9,550,100 that was the contractual maximum price.

21.

Upon information and belief, the delays in the construction process were caused by S&R's decision to move workers from plaintiffs' project to other projects on which S&R was working.

22.

Upon information and belief S&R also used materials purchased by Vira and Airport Motel for other projects that were being built by S&R.

23.

S&R failed to pay subcontractors whose work was billed to Vira and Airport Motel and paid in full exposing plaintiffs to possible liens and double billing.

24.

S&R failed to schedule the work in a proper order, which caused many completed items to be demolished and rebuilt in order to make way for other work to be completed, thereby increasing the cost of the project.

25.

When Vira refused to make further payments to S&R because of the serious delays, cost overruns and improper work, S&R abandoned the project engaged in a systematic effort to prevent Vira and Airport Motel from completing the project and opening the hotel.

26.

As a result of S&R's delays, breaches of contract, construction defects and interference with the completion of the hotel construction and opening, plaintiffs have suffered the following losses:

a. Increased cost of construction;

b. Increased interest and financing costs;

c. Loss of revenues;

d. Cost of repairing defective and substandard work;

e. Increased management costs; and

f. Diminished value of the completed project.

WHEREFORE, plaintiffs, Arvind Vira and Airport Motel, L.L.C., pray that after due proceedings are had that there be judgment herein in their favor and against defendant S&R

Development, Inc., in an amount consistent with the evidence shown at trial together with legal interest from the date of judicial demand and all costs of these proceedings.

                                                                                  Respectfully submitted:

_____
Matthew P. Chenevert (LSBA 4026)
501 Lake Avenue, Suite 8A
Metairie, LA 70005
Phone:  (504) 451-4727
Fax:  (877) 452-2761
Email:  mchenevert@chenevertlaw.com